## McALLEN METHODIST HOSPITAL, Relator,

v.

## The Hon. Mario E. RAMIREZ, Jr., Judge, 332nd Judicial District Court of Hidalgo County, Texas, Respondent.

No. 13–93–035–CV.

Court of Appeals of Texas, Corpus Christi.

May 27, 1993.

Richard M. Frankel, Richard B. Miller, Miller & Frankel, Houston.

Charles Sweetman, Sweetman & Wise, Brownsville.

Rosemary L. Hollan, Peter Kilpatrick, Foster, Lewis, Langley, Gardner & Banack, San Antonio.

Roberto D. Guerra, McAllen.

Douglas M. Kennedy, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi.

Olga Brown, San Antonio.

James DeAnda, Solar & Ellis, Houston.

Neil E. Norquest, McAllen.

William E. Hornbuckle, San Antonio.

Roger W. Hughes, Adams & Graham, Harlingen.

Before DORSEY, KENNEDY and SEERDEN, JJ.

## *OPINION*

DORSEY, Justice.

Pending is a petition for the issuance of a writ of mandamus. In this original proceeding, relator, McAllen Methodist Hospital, asks this Court to order respondent, The Honorable Mario Ramirez, to vacate a discovery order overruling the hospital's objection to a specific request for production. Relator claims that various documents presented to the trial court *in camera* and available for our review are privileged as provided by Tex.Health & Safety Code Ann. § 161.032 (Vernon 1992) and Tex.Rev.Civ.Stat.Ann. art. 4495b § 5.06(g) & (j) (Vernon Supp.1993). We previously granted relator's motion for leave to file the petition for writ of mandamus together with the motions of two other defendants in the same litigation.[1]

The case below arose from injuries sustained by eight-year-old Daniel Cadena at birth. The plaintiffs alleged that relator and Family Medical Center–UT were negligent in admitting one of the residents, Dr. Richard Kling, to their program and in failing to supervise and train him. The Cadenas assert that Dr. Kling was incompetent in his obstetrical care of Mrs. Cadena and that his negligence caused the serious injuries suffered by Daniel.

In May 1992, the Cadenas served requests for production on relator. The request at issue in this mandamus is request number 4, which sought:

All documents kept by you, including but not limited to credentials, personnel, performance evaluations or complaint files for or concerning the following persons: Richard Kling, Curtis Maynard, Joseph Behal, Juan Trevino or Alvin Smith.

Relator objected to this request claiming that it sought privileged matter as defined by Tex.Health & Safety Code Ann. § 161.032 and Tex.Rev.Civ.Stat.Ann. art. 4495b § 5.06(g) & (j). The trial court conducted a hearing on the issue, reviewed the documents *in camera,* and determined that the tendered documents were discoverable.

The statutes creating the privileges from discovery address the proceedings of two types of committees that may be created by providers of health care. The older statute, section 161.032 of the Health and Safety Code, deals with "medical committees," while article 4495b § 5.06 concerns "medical peer review committees."

Tex.Health & Safety Code Ann. § 161.032 provides that records and proceedings of a medical committee are confidential and are not subject to court subpoena. However, the statute specifically exempts records made or maintained in the regular course of business by a hospital, health maintenance organization, or extended health care facility. Tex.Rev.Civ.Stat.Ann. art. 4495b deals specifically with peer review committees and protects all communications, proceedings, and records of a medical peer review committee from subpoena or discovery in an action. Thus, no records are exempted from the privilege because they are maintained in the regular course of business.

## THE MEDICAL COMMITTEE PRIVILEGE

 The statutory purpose behind a privilege for hospital committee records and proceedings is to protect the important, but limited, policy of encouraging uninhibited discussion of events that are the subject of committee action or review. *Jordan v. Court of Appeals for the Fourth Supreme Judicial Dist.,* 701 S.W.2d 644, 648 (Tex.

---

1. The following related opinions also issued on this date: *R.K. v. Ramirez,* 855 S.W.2d 204 (Tex. App.—Corpus Christi 1993, orig. proceeding) and *Family Medical Center, U.T. v. Ramirez,* 855 S.W.2d 200 (Tex.App.—Corpus Christi 1993, orig. proceeding).

1985). The supreme court has defined the terms "records and proceedings" under the privilege set forth in section 161.032 to mean those documents generated by the committee in order to conduct an open and thorough review. The privilege generally extends to documents that have been prepared by or at the direction of the committee for committee purposes. Those which are gratuitously submitted to a committee or which have been created without committee impetus are not privileged. The privilege extends to minutes of the committee meetings, correspondence between committee members relating to the deliberation process, and any final committee product, such as a recommendation. *Id.* at 648.

■ The privilege does not extend to routine accumulative information despite the fact that these documents may eventually serve as evidence in committee deliberations. *Barnes v. Whittington,* 751 S.W.2d 493, 496 (Tex.1988). In *Barnes,* the court concluded that letters requesting information on credentials and experience of two doctors were routine administrative records prepared by the hospital in the ordinary course of business. *Id.* The court also determined that documents which listed letters mailed and received by the hospital during the application phase were not privileged. A letter from an insurance company also constituted a gratuitously submitted document and was discoverable.

Justice Phillips, in his concurring opinion in *Barnes,* pointed out the difficulty in applying the standard as announced and opined that if the function and purpose of a duly constituted committee is the improvement of patient care and treatment through self-evaluation and critical review, the committee should be protected by the privilege. *Id.* at 498–99. We follow *Barnes* in determining whether any of the documents are privileged under Section 161.032 of the Health and Safety Code.

■ We find that the trial court clearly erred in refusing to grant protection of certain items based on the supreme court's holdings in both *Barnes* and *Jordan.* Those documents which are clearly privileged are: minutes of the meeting of the Board of Managers of September 20, 1973, and August 22, 1978, minutes of the Credentials Committee meetings dated August 1, 1978, June 2, 1981, and February 5, 1985, minutes of the Executive Committee dated August 10, 1978, June 12, 1981, and February 8, 1985, and minutes of the Board of Trustees dated June 18, 1981, and March 7, 1985. These are clearly protected. *Jordan,* 701 S.W.2d at 648. It is settled that many of the credentialing files in this original proceeding would *not* be privileged under section 161.032 based on the holding in *Barnes.*

## MEDICAL PEER REVIEW COMMITTEE

The more difficult question before us is whether the credentialing files of the hospital are privileged under article 4495b, which applies to the records and communications of a medical peer review committee. When answering this question, we are mindful that any claim of privilege is necessarily balanced with the rights of the parties to obtain evidence. Privileges are understandably not favored in law.

The supreme court has not yet determined if it will interpret the privileges afforded in article 4495b in the same way that it has interpreted those privileges set forth in section 161.032. Article 4495b concerns only peer review committees, while section 161.032 concerns hospital committees generally. The dispositive issues to be addressed are 1) whether the credentialing committee of this hospital is a peer review committee as defined by article 4495b, and 2) if so, what documents relating to what activities of the committee are privileged under article 4495b.

A medical peer review committee, as defined in article 4495b § 1.03(6), is:

a committee of a health care entity, or the medical staff of a health care entity, the governing board of a health-care entity, or the medical staff of a health care entity, provided the committee or medical staff operated pursuant to written bylaws that have been approved by the policy-making body of the governing board of the health-care entity and autho-

rized *to evaluate the quality of medical and health-care services or the competence of physicians.* (Emphasis added) Medical peer review or professional review action, as defined in article 4495b § 1.03(9) means:

> the evaluation of medical and health care services, *including evaluations of the qualifications of professional health care practitioners and of patient care rendered by those practitioners.* The term includes evaluation of the merits of complaints relating to health-care practitioners and determinations or recommendations regarding those complaints. (Emphasis added)

The documents submitted to the trial court *in camera* were accompanied by the affidavit of John Mims, the administrator of McAllen Methodist Hospital. Mims averred that the documents tendered included records or proceedings of the hospital committee known as the credentialing committee. The committee's purpose, according to Mims, is to conduct peer review of hospital staff physicians and to grant or deny them privileges to practice medicine and medical specialties at the hospital.

■ The functions and actions of the committee determine if it is a peer review committee as described in article 4495b § 1.03. The credentialing committee of the hospital may perform peer review, and when it does, the privilege of confidentiality attaches. The label attached to the committee is not dispositive. The statutory definition is broad enough to encompass certain duties of the committee as set forth in the Mims affidavit. The privilege attaches to those actions of the committee in reviewing the competency of doctors, nurses, and other medical practitioners while at the hospital.

■ We now turn to whether specific documents are privileged. The language of article 4495b § 5.06(g) & (j) exempts all proceedings, records, and determinations of a peer review committee and all communications made to the committee. While section 161.032 of the Health and Safety Code mandates that only the records and proceedings of a committee are privileged, the language of article 4495b makes privileged *all* proceedings, records, determinations, and communications.

From our review of the record, it appears that the credentialing committee in this case has at least two functions. One function is to determine the qualifications of physicians who seek appointment to the hospital staff. Another function is to act as an internal review committee of those physicians who seek either reappointment or greater hospital privileges.

The function the committee is performing determines the protected status of its activities. If the credentialing committee is functioning as a committee to improve patient care and treatment through self-evaluation and critical review, the documents prepared by them are privileged. The evaluation and review must relate to activities or occurrences at the hospital so that corrective or preventative measures may be taken.

■ In keeping with the supreme court's opinion in *Barnes*, we hold that the *initial* credentialing information obtained by the credentialing committee is *not privileged.* When a physician initially applies for the staff privileges, the credentialing committee makes a determination whether that physician is qualified to practice at the hospital. It is not, at this point, examining or reviewing events that had occurred at the hospital so as to function as a self-evaluation or critical review committee of its practices and procedures. When the committee is determining who should be on staff and who should not, it is not conducting an internal evaluation of the institution; rather, it is evaluating the applicant. The applicant is not yet part of the medical team of the institution. Those documents, applications, inquiries, and recommendations regarding whether an outsider should be allowed to practice the medical arts at the institution are not privileged.

With regard to this record, the documents which are not privileged are the initial applications of the physicians when they applied for staff privileges, and the accompanying recommendations.

We understand the policy concerns which dictate in favor of such information being privileged. The privilege allows both the applicant and former professors, colleagues, or former employers to speak freely about the applicant. However, the information gleaned during this process does not call upon the committee to evaluate the types of services the hospital is rendering, nor does it critically evaluate its staff members. Protection of this type of information would merely serve to shield from discovery any mistakes that a committee makes when negligently hiring, while failure to protect this type of information might increase the concern a recommending physician might have to speak freely about an applicant. We believe that the purpose of the medical review process is not enhanced by shielding this type of information.

We do find, however, that any subsequent credentialing information maintained by the committee is privileged. This information evaluates the performance of staff while at the institution. The information sought at this point is created with committee impetus. We hold that those documents which concern reappointment to the medical staff, including the physicians' reappointment files, are privileged.

Mandamus is clearly proper in this instance to correct the trial court's abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992). In conclusion, we have found that the trial court abused its discretion by allowing discovery of the minutes of the various hospital committees named above. We also find that the trial court abused its discretion by allowing discovery of all of the information which concerns reappointment of the physicians by the hospital. In all other respects, we think the trial court was correct.

We trust that the trial court will grant relator's protection of the above documents. Mandamus will issue only if the trial court refuses to comply.