K.P., By and Through His Next Friend
Julee BOSSON, and Julee Bosson,
Individually, Relators,

v.

The Honorable Anne Ashby PACKER,
Presiding Judge, 134th Judicial District
Court, Dallas County, Texas, Respondent.

No. 05–91–01911–CV.

Court of Appeals of Texas,
Dallas.

Feb. 20, 1992.

Rehearing Denied March 2, 1992.

Michael F. Pezzulli, Charles J. Fortunato,
Dallas, for relators.

G.H. Kelsoe, Jr., Jeffrey L. Clark, Dallas, for respondent.

Before BAKER, THOMAS and ROSENBERG, JJ.

BAKER, Justice.

This is a mandamus proceeding. The issue is whether, because Julee Bosson has brought suit as her son's next friend, her mental health records are discoverable under rule 510(d)(5) of the Texas Rules of Civil Evidence. Relators contend that since Bosson is suing only for her son and is seeking no individual relief, the exception does not apply to Bosson's records. They seek a writ of mandamus directing the trial judge to set aside her order allowing discovery of Bosson's records. We hold the privilege and not the exception applies. We conditionally grant the writ.

## I. THE FACTS

Julee Bosson originally sued real-party-in-interest Children's World Learning Centers, Inc., individually and as next friend of her son K.P. She alleged various causes of action because of an incident in which another child at the center allegedly "performed a sexual act" on K.P. Bosson sought actual damages for K.P.'s psychological and emotional damage, his mental pain and suffering, and his current and future medical expenses. Bosson also sought damages for her loss of K.P.'s companionship, love, and affection.

Children's World sought discovery of Bosson's mental health records. Bosson objected, asserting, among other grounds, the mental health information privilege. *See* TEX.R.CIV.EVID. 510(b)(1), (2). Children's World responded that the records were discoverable because Bosson's lifestyle and psychological problems, not the incident at the center, were the primary cause of K.P.'s psychological and emotional

damage. The court held a hearing on Bosson's objections. Judge Packer made a tentative ruling that the records were discoverable. She requested that Bosson tender them for in camera inspection.

Bosson nonsuited her individual claims and moved for reconsideration of the court's ruling that the records were discoverable. She tendered the documents for in camera inspection. She reasserted the mental health information privilege. Judge Packer denied the motion to reconsider. In her order, Judge Packer found that the records were relevant to Children's World's defense, subject to the mental health information privilege, and discoverable under the exceptions to the privilege found in rules 509(d)(4) and 510(d)(5).[1]

Relators seek a writ of mandamus directing Judge Packer to set aside this order. Relators argue that because she found the records are subject to the mental health information privilege, Judge Packer can order their production only if one of the exceptions to the privilege applies. They contend that the exceptions on which Judge Packer relied, rules 509(d)(4) and 510(d)(5), apply only to an offensive use of the privilege. Relators argue that the court cannot consider Bosson's assertion of the privilege an offensive use because she nonsuited her individual claims.

## II. THE MENTAL HEALTH INFORMATION PRIVILEGE

Under rule 510, a privilege exists to communications between a patient and mental health professional. This privilege also applies to the professional's records of the patient's identity, diagnosis, evaluation, and treatment. TEX.R.CIV.EVID. 510(b)(1), (2). Subsection (d)(5) provides an exception to this privilege.[2] It states:

1. Although the court had custody of Bosson's records, it inadvertently released them to Children's World for a short period. In its response to Bosson's petition for writ of mandamus, Children's World argues that Bosson waived the privilege because of this release. Judge Packer's order states that she did not find that Bosson waived the privilege. At oral argument, Chil-

dren's World conceded that it was bound by this finding.

2. Judge Packer concluded that Bosson's records were discoverable under the exception contained in Rule 509(d)(4) as well as Rule 510(d)(5). Rule 509 governs the physician/patient privilege. The exceptions in subsections

**(d) Exceptions.** Exceptions to the privilege in court proceedings exist:

> (5) as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense.

TEX.R.CIV.EVID. 510(d)(5).

Bosson nonsuited her individual claims. She is now suing Children's World only as next friend, seeking damages for her son, K.P. The primary question in this proceeding is whether, under these circumstances, Bosson's mental health records are discoverable under this exception. We must determine: (1) whether the exception in subsection (d)(5) applies only to offensive uses of the privilege and, (2) if it does, whether Bosson is using the privilege offensively.

### A. Scope of subsection (d)(5).

■ The leading Texas case about the offensive use of a privilege is *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex.1985). In *Ginsberg*, Mrs. Gaynier brought a trespass to try title suit against Ginsberg in 1981. Ginsberg claimed the property at issue under two deeds, one signed in January 1972 by Gaynier's deceased husband and a second one signed several months later by Gaynier. Gaynier alleged that her husband's deed was a forgery. She claimed that Ginsberg fraudulently obtained her signature. At her deposition, she stated that she could not remember signing the second deed. She also revealed that a psychiatrist treated her in 1972. Ginsberg sought access to her medical records. Gaynier asserted the psychotherapist/patient privilege. The records showed that in 1972 Gaynier told her psychiatrist that she sold the property, a statement relevant to Ginsberg's statute of limitations defense. *Ginsberg*, 686 S.W.2d at 106.

The Texas Supreme Court concluded that Gaynier could not seek affirmative relief against Ginsberg and use the psychotherapist/patient privilege to shield relevant information from discovery. *Ginsberg*, 686 S.W.2d at 107. The court characterized Gaynier's use as an offensive, rather than defensive, use of the privilege that lay outside its intended scope. *Ginsberg*, 686 S.W.2d at 107.

As defined in *Ginsberg*, an offensive use of a privilege occurs when the person asserting the privilege is seeking affirmative relief but uses a privilege to shield relevant information. In contrast, when read literally, the exception in subsection (d)(5) is much broader. By its terms, subsection (d)(5) creates an exception to the mental health information privilege whenever any party relies on the patient's condition as an element of his claim or defense. The relying party need not be the patient, and the patient need not be the plaintiff. Indeed, under a literal reading of subsection (d)(5), the patient need not be a party at all, so long as the patient's condition is relevant to a party's claim or defense.

Despite its broad language, those courts faced with the issue have interpreted subsection (d)(5) narrowly. Although courts have often found a plaintiff's mental health records discoverable under subsection (d)(5), *see, e.g., Midkiff v. Shaver*, 788 S.W.2d 399 (Tex.App.—Amarillo 1990, orig. proceeding), we have found no published opinion in which a court interpreted subsection (d)(5) as allowing discovery of privileged information concerning a party who was not seeking affirmative relief. To the contrary, in two recent cases in which the plaintiff sought information about the defendant's medical records, the court of appeals concluded that, despite its broad language, the intention of the exception in subsection (d)(5) was to encompass only offensive use of the privilege. *See Dossey v. Salazar*, 808 S.W.2d 146, 147 (Tex. App.—Houston [14th Dist.] 1991, orig. proceeding); *Scheffey v. Chambers*, 790 S.W.2d 879, 881 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding).

509(d)(4) and 510(d)(5) are identical. Because Judge Packer found the records protected by the mental health information privilege, for simplicity's sake, we will refer primarily to Rule 510(d)(5).

Reviewing the history of rule 510(d)(5), the *Dossey* court characterized the broad language of subsection (d)(5) as no more than a response to a specific problem in the probate area:

> The record as presented to us includes the comments/notes of the State Bar Committee on Administration of the Rules of Evidence and gives insight as to the meaning of the 1988 modifications.... The comments to the rule changes include, in pertinent part:
>
> > By providing for an exception "in any proceeding in which any party relies upon the condition as a part of the party's claim or defense," the rule will no longer allow the personal representative of an estate to claim the privilege on behalf of the testator where the testator's capacity is at issue.
>
> It is clear that the current Rule 509(d)(4) and 510(d)(5) were in response to a specific problem in the probate area. We are not persuaded that the tenets of the privilege as expressed in *Ginsberg* have changed.

*Dossey*, 808 S.W.2d at 148.

■ The policy underlying the mental health information privilege and the rules about its waiver also provide support for interpreting the exception of subsection (d)(5) as limited to an offensive use of the privilege. The purpose of the privilege is to protect the patient against an invasion of privacy and to encourage the complete disclosure necessary to psychological treatment. *Ex parte Abell*, 613 S.W.2d 255, 263 (Tex.1981); *Dossey*, 808 S.W.2d at 148. A patient may waive the privilege, however, by voluntarily disclosing any significant part of the privileged matter. TEX.R.CIV. EVID. 511. The rationale preventing the offensive use of a privilege fits well with these principles. When a patient seeks affirmative relief that places his mental condition in issue, his actions have already compromised the privacy interest behind the privilege. Fairness requires that the defendant have access to relevant information. *See* S. GOODE, O. WELLBORN & M. SHARLOT, Guide to Texas Rules of Evidence: Civil and Criminal § 510.4 at p. 333 (Texas

Practice 1988). On the other hand, if we broadly interpret the exception in subsection (d)(5) to apply to the mental health records of a nonparty, then a suit may result in the loss of the patient's privilege without any affirmative act of waiver on the patient's part. We hold that, despite its broad language, subsection (d)(5) encompasses only offensive, not defensive, uses of the mental health information privilege.

■ In this case, Children's World argues that Bosson's records are discoverable because the bond between mother and child is such that Bosson's psychological condition is uniquely relevant to K.P.'s condition, so we should consider the records of mother and son as one. This argument is nothing more than an argument that Bosson's psychological records are uniquely relevant to K.P.'s mental and emotional condition and to the damages that he is seeking. Unless we characterize Bosson's assertion of the privilege as an offensive one, the mere fact that Bosson's records are relevant is not, in itself, sufficient to make them discoverable. *See Dossey*, 808 S.W.2d at 147–48; *Scheffey*, 790 S.W.2d at 881.

**B. Bosson's Assertion of the Privilege.**

■ Children's World points out that K.P. can bring suit himself once he reaches the age of eighteen. It argues that because Bosson has chosen to file suit on K.P.'s behalf, her assertion of the mental health information privilege is an offensive one. We disagree.

In this case, Bosson nonsuited her individual claims and is suing only as K.P.'s next friend. A minor has a well-defined common law cause of action for injuries negligently inflicted by others. *See Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex.1983). This cause of action and the damages that the child can recover are distinct from the parent's right to recover damages for injuries to the child. *Sax*, 648 S.W.2d at 666. In a suit by next friend, the real party plaintiff is the child and not the next friend. *Gracia v. RC Cola 7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984). The next friend acquires no interest in the judg-

ment and is not a necessary party in a proceeding to enforce it. *Wygal v. Myers*, 76 Tex. 598, 13 S.W. 567, 568 (1890). Unless the court appoints a guardian of the child's estate, the minor's recovery remains subject to court supervision. *See* TEX.PROP. CODE ANN. §§ 142.001–.005 (Vernon 1984).

When a minor sues by next friend, the cause of action and the recovery belong to the minor. *Sax*, 648 S.W.2d at 666. Because she is suing only as K.P.'s next friend, Bosson cannot recover her individual damages. Under the doctrine of waiver by offensive use, a party may not "use one hand to seek affirmative relief in court and with the other hand lower an iron curtain of silence" around the facts of the case. *Ginsberg*, 686 S.W.2d at 108. Bosson is seeking no affirmative relief. Consequently, her assertion of the mental health information privilege is not an offensive use of the privilege. The subsection (d)(5) exception does not apply.

### III. APPLICATION OF MANDAMUS STANDARDS

■ This court may issue a writ of mandamus only when two conditions exist. First, the trial court's action must be a clear abuse of discretion or the violation of a duty imposed by law. Second, the relator must have no adequate remedy at law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985, orig. proceeding). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson*, 700 S.W.2d at 917.

■ To show an abuse of discretion, a relator must show that, under the circumstances of the case, the facts and law permit the trial court to make but one decision. *Johnson*, 700 S.W.2d at 917. While the scope of discovery rests largely within the discretion of the trial court, a trial court that improperly orders discovery of privileged materials abuses its discretion. *See Texarkana Memorial Hosp. v. Jones*, 551 S.W.2d 33, 35 (Tex.1977).

Because the subsection (d)(5) exception does not apply, Bosson's mental health

records remain privileged. The trial court abused its discretion in allowing their discovery. Once disclosed, retraction of a privileged document is not possible. Bosson has no adequate remedy at law. *See West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978, orig. proceeding). We hold Bosson has shown entitlement to the relief she seeks. We conditionally grant relators' petition for writ of mandamus.