**R.K., M.D., Relator,**

v.

**The Hon. Mario E. RAMIREZ, Jr., Judge, 332nd Judicial District Court, Hidalgo County, Texas, Respondent.**

**No. 13–93–040–CV.**

Court of Appeals of Texas, Corpus Christi.

May 27, 1993.

Rehearing Overruled June 17, 1993.

Neil E. Norquest, McAllen.

Roberto D. Guerra, McAllen.

Charles Sweetman, Sweetman & Wise, Brownsville.

Thomas F. Nye, Brin & Brin, Corpus Christi.

James DeAnda, Solar & Ellis, Houston.

Richard M. Frankel, Richard B. Miller, Miller & Frankel, Houston.

Olga Brown, San Antonio.

William E. Hornbuckle, San Antonio.

Rosemary L. Hollan, Peter Kilpatrick, Foster, Lewis, Langley, Gardner & Banack, San Antonio.

Before DORSEY, KENNEDY and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

Dr. Richard Kling has petitioned for a writ of mandamus seeking relief from three separate orders overruling motions to protect various items from discovery. He asserts claims of privilege as do McAllen Hospital and Family Medical Center–UT in related proceedings.[1] His primary complaint concerns the trial court's order requiring him to produce copies of medical records of his treatment by Charter Palms Hospital and the Tropical Texas Center for Mental Health and Mental Retardation. Relator claims that various documents submitted to the trial court *in camera* are privileged based upon the physician/patient privilege and the confidentiality of mental health information. Tex.R.Civ.Evid. 509 and 510.

The case below arose from injuries sustained by eight-year-old Daniel Cadena at birth. The plaintiffs sued relator and others alleging that their negligence caused the serious injuries suffered by Daniel. Specifically, the plaintiffs' claims against Dr. Kling, set forth in their third amended petition, were that he failed to properly diagnose, monitor, and treat Mrs. Cadena during her pregnancy. According to the plaintiffs, the doctors failed to determine that Mrs. Cadena was carrying twins until after the first twin was born. The plaintiffs claim that because the doctors were unprepared for the birth of twins, Daniel was born suffering from asphyxia. The action against the other defendants, McAllen Methodist Hospital and Family Medical Center–UT, are based on their alleged negligent hiring of Dr. Kling and other physicians, and the failure to supervise them.

The plaintiffs sought, through notices to take depositions by written questions, relator's medical records from an admission to Charter Palms Hospital and records concerning treatment at the Tropical Texas Center for Mental Health and Mental Retardation. Relator contended that those documents were privileged based upon Tex. R.Civ.Evid. 509 and 510. These rules provide, in relevant parts:

Rule 509 PHYSICIAN/PATIENT PRIVILEGE

(b)(1) Confidential communications between a physician and patient, relative to or in connection with any professional services rendered to the patient are privileged and may not be disclosed....

(d) Exceptions

(4) as to a communication or records relevant to an issue of physical, mental or

---

1. These claims are disposed of in related opinions which also issued today. *See McAllen Methodist Hospital v. Ramirez,* 855 S.W.2d 195 (Tex.App.—Corpus Christi 1993, orig. proceed-ing) and *Family Medical Center–Ut v. Ramirez,* 855 S.W.2d 200 (Tex.App.—Corpus Christi 1993, orig. proceeding).

emotional condition of a patient in *any* proceeding in which *any* party relies upon the condition as a part of the party's claim or defense.[2]

RULE 510 CONFIDENTIALITY OF MENTAL HEALTH INFORMATION

(b)(1) Communication between a patient and a professional is confidential and shall not be disclosed.

(d) Exceptions

(5) as to a communication or record relevant to an issue of physical, mental or emotional condition of a patient in *any* proceeding in which *any* party relies upon the condition as a part of the party's claim or defense.

The plaintiffs argue, as the parties relying "upon the condition" as part of their claim, that the records come within the exceptions set forth in both rules and are not privileged.

Neither privilege existed in Texas common law. Rule 509(d)(4) originally provided that the physician/patient privilege was inapplicable when the patient-litigant was attempting to recover monetary damages for any physical or mental condition. *See generally* Goode, Wellborn and Sharlot, Texas Practice, Texas Rules of Evidence: Civil and Criminal § 509.4 (1988). The supreme court, in an earlier opinion, had concluded that a plaintiff could not use one hand to seek affirmative relief and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing against a right to maintain an action. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex.1985). The present rule is a result of the 1987 amendments that broadened the exceptions to the privilege, allowing discovery of records or communications in which any party relies on a physical, mental or emotional condition as part of his claim or defense.

The case law concerning whether the amendments sought to substantively alter the rules is conflicting. Likewise, the legal commentaries vary regarding whether the amendments to the rules posed a substantive change in the law.

To date, the majority of the courts which have ruled on the issue after the amendments have not interpreted the rule as broadly as the trial court did in this case. In *Dossey v. Salazar*,[3] the court of appeals found that the trial court had abused its discretion in allowing the wholesale discovery of the defendant's mental health records. In *Dossey*, the court said that the rules concerning physician-patient privilege were intended to prevent the *offensive* use of a privilege to conceal evidence of a condition.

The *Dossey* court noted that the comments to the amendments to rules 509 and 510, by providing for an exception "in any proceeding in which any party relies upon the condition as a part of the party's claim or defense," no longer allows the personal representative of an estate to claim the privilege on behalf of the testator when the testator's capacity is in issue. The court concluded that the rule amendments were in response to the probate area specifically and did not change the privilege as interpreted by earlier case law. *Id.* at 148.

Likewise, in *Bosson v. Packer*,[4] the Dallas court held that despite its broad language, the exception to Rule 510 encompasses only offensive, not defensive, uses of the medical information. *Id.* at 667.

The Fort Worth Court of Appeals took the opposite view in *S.A.B. v. Schattman.*[5] In *Schattman*, the plaintiffs sought to obtain all records of a defendant's treatment for drug addiction and related mental health problems. The Fort Worth court held that the hospital records of the defendant doctor were not privileged. The court, in *Schattman*, interpreted the amendments to vitiate much of the force of the privilege. The court indicated that it could not align itself with the *Dossey* court,

---

2. Emphasis added by the author unless otherwise noted.

3. 808 S.W.2d 146 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding).

4. 826 S.W.2d 664 (Tex.App.—Dallas 1992, orig. proceeding).

5. 838 S.W.2d 290 (Tex.App.—Fort Worth 1992, orig. proceeding).

which had concluded that the reason for the rule change was to clear up a probate problem. *Id.* at 295.

In interpreting the plain language of these two rules, we consider the competing societal objectives sought to be protected. The privilege protecting communications between the patient and physician tends to encourage a free and open discussion of the patient's fears and actions without fear that interlopers will have access to the innermost secrets of the patient. On the other hand, any shield to discovery impedes and sometimes prevents the search for truth in court.

The general rule is that communications between a patient and professional are confidential and shall not be disclosed. The exception at issue here provides that a communication relevant to a patient's mental, physical, or emotional condition may be disclosed if any party *relies on the condition in its claim or defense.* General dredging by discovery in these private matters is forbidden.

The two criteria of the exception are: 1) relevancy of the communication to the patient's condition, and 2) reliance upon the patient's mental, physical, or emotional condition as part of a claim or defense.

There is no dispute that the communications sought are relevant to Dr. Kling's mental, emotional, or physical condition. The documents sought are those concerning his treatment and are relevant to his condition. Whether the plaintiff, or any party, is relying on his condition as a part of its claim or defense is the question.

■ The party seeking protection from disclosure has the burden of establishing the privilege. Tex.R.Civ.P. 166b(4). Once the privilege has been established by pleading, evidence, and *in camera* inspection, the burden then is shifted to the party relying on the exception to the privilege.

■ A party who alleges that the impaired condition of a defendant caused harm has a right to discover information about that defendant's mental or physical condition. The party relying on the exception, however, must show that its claim or defense is at least partly predicated on the patient's physical, emotional, or mental condition.

■ Whether a plaintiff is relying upon a defendant patient's condition as a basis of the claim or defense is determined by the pleadings. In *Kentucky Fried Chicken Nat'l Management Co. v. Tennant* [6], the court held that a defendant who sought to obtain mental health records from the plaintiff had placed the plaintiff's condition in issue by *alleging* a connection between the plaintiff's psychiatric history and her claims of damages. In this case, the pleadings suggest nothing to indicate that Dr. Kling's emotional condition is a part of their claim. The pleadings concern only the negligence of Kling in his treatment of Mrs. Cadena. A general allegation of negligence does not bring into issue the medical condition of Dr. Kling. *See Id.* at 321. Without pleadings to indicate that Kling's condition was a basis of the claim, there was nothing before the trial court to support its ruling.

The trial court also had before it an affidavit, prepared by the plaintiff's attorney and submitted without giving relator an opportunity to review or respond to it, and an excerpted deposition of Maria Cadena, one of the plaintiffs. The deposition excerpt was not material to anything at issue. Likewise, the affidavit was improperly considered by the trial court. *Remington Arms, Inc. v. Canales*, 837 S.W.2d 624, 626 (Tex.1992). In sum, there was nothing before the trial court to invoke the exception to the privilege.

■ We hold that the trial court abused its discretion in ordering the privileged documents produced absent any pleading to show that the plaintiffs were indeed placing relator's medical condition in issue. Mandamus will issue to protect the privilege. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992). We request the trial court to rescind the order requiring the disclosure of relator's medical records. Manda-

6. 782 S.W.2d 318 (Tex.App.—Houston [1st Dist.] 1989, no writ).

mus will issue only if the trial court refuses to comply.