**Jerry EASTER, Relator,**

v.

**Honorable Frank G. McDONALD, Judge Presiding, 74th District Court, McLennan County, Texas, Respondent.**

No. 10–94–047–CV.

Court of Appeals of Texas, Waco.

May 11, 1994.

Bruce Burleson, Troy, W.V. Dunnam, Jr., Dunnam & Dunnam, Waco, for relator Easter.

Michael Scanes, Naman, Howell, Smith & Lee, Waco, for real party in interest Cecelia Easter.

John Robert King & M. Steven Deck, Law Office of John King, McAllen, for real party in interest Stanley Turner, as next friend of Amy Turner.

David Deaderick, Tulk & Deaderick, Austin, for real party in interest Ph.D. John Wise.

Mark Ramsey, Ramsey & Murray, Houston, for intervenor Germania Ins. Companies.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Jerry Easter, Relator, seeks extraordinary relief by way of mandamus against Honorable Frank G. McDonald, Respondent, who is sitting as the judge of the 74th District Court. Easter's petition asks that we order Judge McDonald to rescind an order by which Dr. John Wise, Ph.D., will be required to turn over to Stanley Turner as Next Friend of Amy A. Turner, the Real Party in Interest, records made by Dr. Wise during the course of professional services rendered by him to Relator. Relator's claim is based on the privilege in Rule 510 of the Rules of Civil Evidence. Because we choose to follow the decisions of courts of appeals that have limited the application of an exception to the privilege, we conditionally grant the writ.

## THE SUIT

Turner and Cecelia Easter were married from 1971 until 1984. They are the natural parents of Amy Turner. Cecelia and Easter were married from 1985 until 1987. Turner claims that, during that marriage, Easter sexually assaulted Amy. Easter was professionally counselled by Wise, who also met with Cecelia and Amy. Easter and Cecelia remarried in 1988, and although his petition is not clear on the point, Turner implies that the assaults continued after Easter counselled with Wise and after Cecelia and Easter remarried.

Turner, on behalf of Amy, who is still a minor, brought suit in the 74th District Court against Easter for the assaults, also alleging negligence, gross negligence, intentional infliction of emotional distress, and negligent invasion of privacy; against Cecelia alleging negligence, gross negligence, fraud, intentional infliction of emotional distress, and negligent invasion of privacy; and against Wise alleging professional negligence, gross negligence, fraud, and intentional infliction of emotional distress. He seeks $21,700,000 in actual damages and $25,000,000 in punitive damages.

## THE DISCOVERY DISPUTE

Turner sent a request for production to Wise under Rule 167 of the Rules of Civil Procedure, requesting production of all documents that relate to the treatment of Easter. See TEX.R.CIV.P. 167. Wise objected to the request on the grounds that his records contain confidential mental health information that is privileged under Rule 510 of the Rules of Civil Evidence. See TEX.R.CIV.EVID. 510. After Turner requested that Easter produce the documents, Easter asserted his right against self-incrimination. Turner sought an order compelling production of the disputed records. After a hearing, Respondent, on February 4, 1994, signed an order generally sustaining Easter's self-incrimination objection. The order also stated that Easter must provide copies of the documents in compliance with the discovery rules before *he* could use them at trial in support of any defense he might offer. On March 16, however, Respondent signed an order that overruled Wise's objections under the civil evidence rules and ordered that Wise produce his records with regard to Easter within thirty days. The second order further determined that Wise's records relating to Amy are discoverable, that his records relating to Cecelia are not discoverable, and that any reference to Cecelia in Easter's records or in Amy's records should be deleted. On March 25, Easter sought a writ of mandamus in this court to require Respondent to vacate the March 16 order. Wise appeared to assert (1) that Respondent's order is not sufficiently specific to allow him to know which records to produce and which to withhold and (2) that a potential

conflict may arise between his duty to Easter and Cecelia to protect their confidentiality rights and his ability to defend himself without his records. Cecelia also appeared to express her concern about the "joint-session" records, asserting that communications made in such sessions and the records of those sessions do not lose their confidentiality because other family members were present. Turner filed a response on behalf of Respondent.

## STANDARD OF REVIEW

■ The permissible scope of discovery includes "anything reasonably calculated to lead to the discovery of material evidence," but overly broad requests, harassment, or disclosure of privileged information exceed that scope. *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984) (orig. proceeding).

■ A writ of mandamus may be issued to correct a "clear abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). Issuance of writs of mandamus is limited to those instances in which no adequate remedy by appeal exists. *Id.* at 840. A court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* at 839–40.

■ With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Id.* The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

■ Review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no "discretion" in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Id.*

The facts involved in this discovery dispute are uncontradicted. The dispute centers around the scope of the exception in Rule 510(d)(5) of the Rules of Civil Evidence. *See* TEX.R.CIV.EVID. 510(d)(5).

## THE SPLIT OF AUTHORITY

■ Rule 510 provides for confidentiality of mental health information. Communications between a "professional" such as Wise and a "patient" such as Easter "shall not be disclosed." *Id.* 510(a)(1), (2), (b)(1). Records of the identity, diagnosis, evaluation, or treatment of a patient "shall not be disclosed." *Id.* 510(b)(2). The privilege may be claimed by the patient, a representative of the patient, or by the professional, whose authority to do so is presumed. *Id.* 510(c). The Rule provides for exceptions to non-disclosure, including those communications and records "relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense." *Id.* 510(d)(5).

After the Rule was amended in 1988, a split developed in the courts of appeals about the application of the quoted exception. Two courts of appeals have held that the exception applies, as before the amendment, only when the objecting party attempts to make "offensive" use of the privilege, while three other courts of appeals have applied the language of the amended rule somewhat literally. *Compare Bosson v. Packer*, 826 S.W.2d 664 (Tex.App.—Dallas 1992, orig. proceeding); *Dossey v. Salazar*, 808 S.W.2d 146 (Tex. App.—Houston [14th Dist.] 1991, orig. proceeding); *Scheffey v. Chambers*, 790 S.W.2d 879 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding); *with Gustafson v. Chambers*, 871 S.W.2d 938 (Tex.App.—Houston [1st Dist.] 1994, orig. proceeding); *R.K. v. Ramirez*, 855 S.W.2d 204 (Tex.App.—Corpus Christi 1993, orig. proceeding); *S.A.B. v. Schattman*, 838 S.W.2d 290 (Tex.App.—Fort Worth 1992, orig. proceeding).

*Dossey* held that Rule 510(d)(5) is intended to prevent the offensive use of the privilege that the Rule otherwise provides. *Dossey*, 808 S.W.2d at 147 (citing *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 107 (Tex.

1985) (orig. proceeding)). The Court noted in *Dossey:*

> If a plaintiff could gain access to a defendant's mental health information merely by making a claim regarding the condition, patients would be deterred from ever seeking such emotional guidance, and this violates the very nature of psychological/psychiatric treatment which requires free and complete disclosure of all thoughts and feelings of the patient.

*Dossey,* 808 S.W.2d at 148. The court also noted that the 1988 amendment to the exception in question was made in response to a problem that had developed in the probate area. *Id.*

*Bosson* recognizes that the "policy underlying the mental health information privilege and the rules about its waiver also provide support for interpreting the exception of subsection (d)(5) as limited to an offensive use of the privilege." *Bosson,* 826 S.W.2d at 667.

*Ramirez* considered the competing societal objectives sought to be protected: "The privilege protecting communications between the patient and physician tends to encourage a free and open discussion of the patient's [thoughts] and actions without fear that interlopers will have access to the innermost secrets of the patient" and the fact that "any shield to discovery impedes and sometimes prevents the search for truth in court." *Ramirez,* 855 S.W.2d at 207. We believe that the interest protecting communications between a patient and a professional is the paramount interest.

As of the date of this opinion, the Supreme Court has not addressed this issue.[1]

Respondent was faced with conflicting legal authorities and had to choose between them. We believe, however, that the opinion in *Dossey* is well reasoned and reaches the correct result. *See Dossey,* 808 S.W.2d at 146–48. We further agree with Easter that, if a literal interpretation of Rule 510(d)(5) is adopted, a patient can never be confident about the confidentiality of statements to a mental health professional because any party

can make some claim based on the patient's mental condition solely for the purpose of gaining access to the patient's records and statements.

Thus, because Easter has made no offensive use of the privilege provided by Rule 510, we find that Respondent did not apply the law correctly to the undisputed facts. *See Walker,* 827 S.W.2d at 840. The objections based on Rule 510 should have been sustained. *See id.;* TEX.R.CIV.EVID. 510. Accordingly, we find an abuse of discretion. *See Walker,* 827 S.W.2d at 840. We note that Respondent's March 16 order provided that all references to Cecelia in Amy's records should be deleted; likewise, all references to Easter in Amy's records should be deleted.

## CONTENTIONS NOT REACHED

We need not reach Easter's contention that Respondent should have ordered any statements made by him to Wise deleted from the records before they could be produced. Because Wise's counsel stated in oral argument that he did not anticipate the necessity of using the records in defense of Wise and because Wise did not seek relief in this court, we do not reach his suggestion that a problem may develop if he finds it necessary to use them. Because references to Cecelia and Easter will be deleted from Amy's records and because she did not seek relief in this court, we do not reach Cecelia's assertions about the "joint-session" records.

## CONCLUSION

We hold that Relator is entitled to the mandamus relief he seeks. We are confident that Respondent will modify the order dated March 16 to comply with our decision. Our writ of mandamus will issue only in the event that he fails to do so.

1. In *Groves v. Gabriel,* 874 S.W.2d 660 (Tex. 1994), the Court noted that the Groves had waived the privilege by bringing suit for severe emotional damages that included "post-traumatic stress disorder" but held that the trial court's order compelled an overly broad release of her records.